**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**JAMES S.**

                      **Plaintiff,**                **22-CV-06079-HKS**

**v.**

**KILOLO KIJAKAZI, ACTING**
**COMMISSIONER OF SOCIAL SECURITY,**

                      **Defendant.**

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #11.

## BACKGROUND

On January 6, 2020, plaintiff, at the age of 33, protectively filed an application for supplemental security income benefits, pursuant to Title XVI of the Social Security Act. Dkt. #5, pp. 205-215.[1] Plaintiff originally alleged an onset date of August 1, 2017, but he later amended it to January 6, 2020. Dkt. #5, pp. 41, 206, 235.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

In a Disability Report filed on February 25, 2020, plaintiff alleged he was disabled due to overlapped vertebrae, scoliosis, and attention deficit/hyperactivity disorder (childhood) ("ADHD"). Dkt. #5, p. 239.

Plaintiff's claim was denied initially on July 2, 2020, Dkt. #5, pp. 93-104, and on reconsideration on August 24, 2020. Dkt. #5, pp. 110-121.

Plaintiff requested a hearing, and a telephonic hearing was held on February 10, 2021 before Administrative Law Judge ("ALJ") David F. Neumann. Dkt. #5, pp. 33-58. Plaintiff appeared with counsel. *Id.*

Upon examination by the ALJ, plaintiff testified that he is 5' 8" tall, weighs approximately 170 pounds, and is right-handed. Dkt. #5, p. 40. He also testified that he graduated from high school and completed some college. *Id.* Plaintiff testified that he lives with his mother and sister and receives Medicaid, food stamps, and pandemic insurance. Dkt. #5, pp. 40-41.

Next, plaintiff testified that he had not used recreational drugs or alcohol since January 2020. Dkt. #5, p. 42. He takes medication which sometimes makes him drowsy. *Id.*

On examination by his counsel, plaintiff testified that he has pain in a lower disc in his back which causes sciatica, and he gets frequent headaches. Dkt. #5, p. 43.

The back pain makes it difficult for him to stand or sit for more than about 15 minutes, and then he needs to move around. Dkt. #5, p. 44. Walking and using stairs are also sometimes difficult, and there are some days when he cannot walk. Dkt. #5, pp. 44-45.

Plaintiff also testified that he cannot bend all the way over at the waist and cannot crouch. *Id.* He can lift a gallon of milk, but when he does too much lifting, his sciatica kicks in. *Id.*

Plaintiff testified that he takes medication for his headaches every day, and it resolves them. Dkt. #5, p. 46. He sleeps about three to four hours at a time. Dkt. #5, p. 47. Plaintiff testified that he does not do many chores since he lives with his mother. *Id.*

Next, plaintiff testified that he suffers from anxiety, and sometimes it feels like he cannot breathe. Dkt. #5, p. 48. He is not sure what triggers his anxiety, and he also has a hard time focusing. *Id.* He cannot typically watch a two-hour movie. *Id.* He testified that he is trying to find medications that will help with these problems. Dkt. #5, p. 49.

Finally, plaintiff testified that he had DWIs in the past but none since January 2020. Dkt. #5, p. 50.

The ALJ next heard testimony from Louis Laplante, a vocational expert ("VE"). *Id.* The ALJ asked the VE to consider a hypothetical person with plaintiff's age, education, and past work experience who could only lift or carry 10 pounds frequently and 20 pounds occasionally; who could stand or walk for a total of 6 hours in an 8-hour workday; who could perform pushing and pulling motions with upper and lower extremities within those weight restrictions; who could frequently climb ramps and stairs, balance, stoop, crouch or crawl; who could climb ropes, ladders, and scaffolds and kneel occasionally. Dkt. #5, p. 52.

Under this hypothetical, the VE testified that the person could perform the jobs of garment sorter, injection mold operator, and ticket seller taker, which are all at the light exertion level. Dkt. #5, pp. 52-53.

Next, the ALJ asked the VE to assume the first hypothetical but with the following changes: the person could lift or carry 5 pounds frequently and 10 pounds occasionally; standing and walking would be limited to 2 hours in an 8-hour workday; he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; and he should avoid climbing most ladders and scaffolds. Dkt. #5, p. 53.

The VE testified that this person would be unable to perform the three jobs identified under the first hypothetical, but he would be able to perform the sedentary jobs of fishing reel assembler, escort vehicle driver, and final assembler of optical goods. Dkt. #5, pp. 53-54.

Finally, the ALJ asked the VE to assume that the person would be off-task for at least 20% of the workday on a consistent basis. Dkt. #5, p. 54. The VE testified that the person then could not perform competitive employment. *Id.*

On examination by plaintiff's counsel, the VE testified that, if the individual were unable to concentrate and focus on their work for two-hour segments at a time, it would be work preclusive. Dkt. #5, pp. 56-57.

After plaintiff clarified that he does not have a driver's license, the ALJ asked the VE about sedentary jobs other than the escort vehicle driver that the person could perform. Dkt. #5, p. 57. The VE testified that the person could also perform the sedentary jobs of lamp shade assembler and semiconductor bonder. Dkt. #5, pp. 57-58.

On March 2, 2021, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #5, pp. 13-32. The Appeals Council denied plaintiff's request for review on January 4, 2022, Dkt. #5, pp. 5-10, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is

unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since January 6, 2020, the alleged onset date; (2) plaintiff has the severe impairments of degenerative disc disease, and scoliosis of the thoracic and lumbosacral spine;  (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff has the RFC to perform light work[2] with the following limitations: he can lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; can stand/walk and sit for six of eight hours during an eight-hour workday; can frequently climb ramps and stairs, balance, stoop, crouch, and crawl; and can occasionally kneel and climb ropes, ladders, and scaffolds;  (5) plaintiff had no past relevant work; (6) considering plaintiff's age, education, work experience, and RFC, he is able to perform the occupations of garment sorter, injection molding machine operator, and ticket seller; and (7) plaintiff has not, therefore, been under a disability within the meaning of the SSA since January 6, 2020. Dkt. #5, pp. 18-27.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency

focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### **Challenge to the ALJ's Decision**

Plaintiff's sole challenge to the ALJ's decision is that, because he found that plaintiff had mild limitations in three of the four paragraph B criteria at step two of the sequential analysis, he erred by failing to include mental health limitations in the RFC. Dkt. #6-1, p. 11.[3] The Court disagrees.

#### *Applicable Legal Principles*

"At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities." *Alba A. v. Comm'r of Soc. Sec.*, 1:24-CV-02577-GRJ, 2025 WL 2022547, at *3 (S.D.N.Y. July 18, 2025) (citation omitted).

---

[3] Plaintiff does not challenge the ALJ's findings regarding his physical impairments.

"Although the Second Circuit has held that this step is limited to screening out de minimis claims. . .the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition 'severe.'" *Id.* (cleaned up).

"Indeed, a finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have no more than a minimal effect on an individual's ability to work." *Id.* (citations and internal quotation marks omitted).

Further, it is well established that a finding of mild mental limitations at step two of the sequential analysis does not require inclusion of related limitations in the plaintiff's RFC. *See, e.g., Jade C. v. Comm'r of Soc. Sec.*, Case # 24-CV-6287-FPG, 2025 WL 3337260, at *4 (W.D.N.Y. Aug. 5, 2025) (ALJ did not err in omitting mental-health restrictions from RFC although he found plaintiff had "mild" mental impairments at step two); *Janine T. v. Comm'r of Soc. Sec.*, Case # 23-CV-384-FPG, 2024 WL 1678128, at *3 (W.D.N.Y. April 18, 2024) (ALJ did not err in not including mental limitations in plaintiff's RFC where he found her depression to be mild and non-severe at step two); *Kathryn A. v. Comm'r of Soc. Sec.*, No. 3:22-cv-1392 (SDV), 2023 WL 8596012, at *9 (D. Conn. Dec. 12, 2023) ("In other words, a finding of mental limitation in analysis of the paragraph B criteria at Step 2 does not necessarily imply a corresponding limitation in a claimant's RFC.") (citation omitted); *Christian H. v. Comm'r of Soc. Sec.*, 20-CV-1490MWP, 2022 WL 3648022, at *4 (W.D.N.Y. Aug. 24, 2022) (noting that "if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does

not err by formulating an RFC without mental limitations or restrictions") (collecting cases).

### *The ALJ Did Not Err in Formulating the RFC*

Plaintiff asserts that the ALJ failed to consider plaintiff's non-severe limitations—specifically, his anxiety and ADHD—in arriving at his RFC. Dkt. #6-1, p. 10. This argument is belied by the record.

At step two of his analysis, the ALJ discussed plaintiff's anxiety and ADHD at length—comprising two and a half pages—reviewing in detail plaintiff's medical records, clinical findings, and the opinions of a consultative psychiatric examiner and two state agency consultants. Dkt. #5, pp. 19-21. The ALJ concluded, reasonably, that this evidence supported a finding that plaintiff's anxiety and ADHD only mildly limited his mental functioning.

For example, the ALJ noted that, after plaintiff successfully completed group substance abuse therapy and outpatient care for anxiety, the "longitudinal mental status evaluation notes consistently recorded intact memory, sustained attention, alertness, good eye contact, normal speech, euthymic mood, full range affect, linear thoughts, cooperative manner of relating, and at least fair insight and judgment." Dkt. #5, p. 20.

The ALJ also noted that plaintiff's mental health provider had referred plaintiff to his primary care provider for ongoing evaluation. *Id.* Plaintiff saw that doctor at

Rochester Regional Health on three occasions during the summer of 2020—after the alleged onset date of January 6, 2020. Dkt. #5, pp. 933-941.

On June 17, 2020, plaintiff had a telemedicine visit with the physician, during which he complained of back pain and possible ADHD. Dkt. #5, p. 939. The doctor recommended that plaintiff continue with counseling and, under "Psychiatric," noted: "The patient's behavior (as notable over video) is normal. Affect appears normal. Thought content and insight appropriate." Dkt. #5, p. 940.

On August 4, 2020, plaintiff had an in-office follow-up appointment, during which he reported ongoing distractibility, but he denied any depression or anxiety. Dkt. #5, p. 936. The doctor noted that plaintiff's affect and behavior were normal, although his eye contact was "mildly evasive." *Id.*

Similarly, in a video appointment on September 9, 2020, plaintiff reported difficulty with focus and distractibility, but he again denied depression or anxiety. Dkt. #5, p. 933. The doctor noted that plaintiff's behavior and affect were normal, and his thought content and insight were appropriate. *Id.*

The ALJ also reviewed the report of Dr. Christine Ransom ("Ransom"), who conducted a psychiatric examination of plaintiff on March 30, 2020. Dkt. #5, pp. 20, 875-878. The ALJ noted, *inter alia*, that plaintiff reported to Ransom that his "main problem" was back pain and that, although he had anxiety because he was unable to work, the

anxiety was "mild and episodic," helped by counseling, and he felt that he was managing it at "an acceptable level." Dkt. #5, pp. 20, 875, 877.

The balance of Ransom's report supports the ALJ's observation that plaintiff's clinical findings were "unremarkable." Dkt. #5, p. 20. Ransom noted plaintiff's appearance and eye contact were appropriate; his thought processes were coherent and goal-directed; he expressed a full range of affect; his mood was neutral; his concentration was intact, and he could count backwards from 20, do simple calculations and serial 7s without error; his memory was intact; his cognitive function was average; and his insight and judgment were good. Dkt. #5, pp. 876-877.

Ransom also noted that plaintiff reported he was independent in all activities of daily living, except driving due to his suspended license, and she opined that he had no limitations in the familiar work-related areas. Dkt. #5, p. 877. Her diagnosis was that plaintiff's anxiety disorder was "currently stabilized," and his prognosis was "good." Dkt. #5, pp. 877-878.

The ALJ also considered the findings of two state agency examiners who opined that plaintiff's depressive and related disorders were non-severe, and that he had no limitations in two of the four paragraph B criteria and only mild limitations in the other two. Dkt. #5, pp. 20, 63-64, 77.

The ALJ found the opinions of these three doctors persuasive because they were consistent with plaintiff's conservative treatment history and his own reports of

~ 13 ~

stability, and because they were supported by "his successful discharge from outpatient therapies, his intact activities of daily living, his maintained remission of substance abuse, and his consistently unremarkable mental status findings during the period at issue." Dkt. #5, p. 20.

The ALJ then walked through the paragraph B criteria, finding that plaintiff had no limitation in understanding, remembering, or applying information, and only "mild" limitations in the other three areas. Dkt. #5, pp. 21-22.

Here, the Court pauses to mention an assertion of fact made in plaintiff's brief. In discussing plaintiff's medical records, the brief states: "Plaintiff also was evaluated ***and admitted for psychiatric treatment***." Dkt. #6-1, p. 7 (emphasis added). To the extent that this assertion is intended to convey that plaintiff received *in-patient* psychiatric care, it is false and misleading.

The medical records cited as support for this statement reflect only that plaintiff attended two 45-minute out-patient counseling sessions and four sessions of an out-patient men's group recovery program between January 24, 2020 and February 4, 2020. Dkt. #5, pp. 330-338. Indeed, plaintiff reported to Ransom as part of his psychiatric history that he had never been hospitalized. Dkt. #5, p. 875.

Returning to the ALJ's RFC analysis, he twice noted that he considered all of plaintiff's impairments in crafting the RFC, both severe and non-severe, which would

~ 14 ~

include plaintiff's anxiety and ADHD. Dkt. #5, pp. 19, 23 ("In addition to the complaints associated with above discussed nonsevere and not medically determinable impairments . . .").

It would elevate form over substance to require an ALJ to repeat, at step four, detailed and lengthy factual findings made at step two. First, as noted above, where an ALJ finds at step two that mental impairments are non-severe, he or she is not required to include mental-health limitations in the RFC.

Second, the ALJ's discussion is sufficient for the Court to review and discern the basis for his reasoning in formulating the RFC without such mental limitations. *See Jade C.*, 2025 WL 2227260, at *6 ("As for lack of explanation, the Court understands the ALJ to have omitted any mental-health restrictions in the RFC for the same reasons that he deemed Plaintiff's mental impairments non-severe, including the mild objective findings, extent of her daily activities, and the unremarkable medical opinions."); *Janine T.*, 2024 WL 1678128, at *3 ("In this case, the Court understands the ALJ to have omitted any mental-health restrictions in the RFC for the same reasons she deemed Plaintiff's depression non-severe, including the normal mental-health examinations, the absence of treatment, and Plaintiff's daily activities.").[4]

---

[4] Plaintiff cites *Laura C. v. Comm'r of Soc. Sec.*, 529 F. Supp.3d 64 (W.D.N.Y. 2021), but that case is distinguishable. There, the Court remanded based on the ALJ's failure to include mental limitations in the RFC because plaintiff's treating therapist and treating psychiatrist opined, respectively, that plaintiff was unable to complete a normal workday and she had a "complete loss of ability" in mental work-related functions. *Id.* at 71-72. The ALJ failed to account for those limitations in the RFC. *Id.* Here, as noted above, there is no such evidence of such an impact of plaintiff's anxiety and ADHD on his mental functioning.

In sum, plaintiff "cannot merely disagree with the ALJ's weighing of the evidence or argue that evidence in the record could support his position." *Laura K. v. Comm'r of Soc. Sec.*, 23-CV-641 (JLS), 2025 WL 339006, at *6 (W.D.N.Y. Jan. 30, 2025) (citation omitted). Instead, plaintiff "must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Id.*

Here, plaintiff has not carried that burden.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #6) is denied , and the Commissioner's motion for judgment on the pleadings (Dkt. #7) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         August 22, 2025

                                       s/ H. Kenneth Schroeder, Jr.
                                       **H. KENNETH SCHROEDER, JR.**
                                       **United States Magistrate Judge**